WILLIAM H. BOOTH AND OTHERS, BY GUARDIAN, APPELLANTS, v. WILLIAM K. KITCHEN AND JAMES L. WORTH, EXECUTORS, ETC., OF OTIS DYER, DECEASED, AND OTHERS, RESPONDENTS.

*Will and codicils — legatees under revoked codicil — right of, when not next of kin, to contest probate of — 3 R. S. (5th ed.), 142, §§ 23, 24.*

The statute allowing the next of kin to contest the validity of a will of personal property within one year after its probate (3 R. S. [5th ed.], 142, § 24), does not extend to persons claiming to be legatees who are not, at the same time, next of kin, but the surrogate has power to relieve parties from the controlling effect of the probate under the section 23 of the statute which provides that after its probate, a will "may be declared void by a competent tribunal."

Under the section (3 R. S. [5th ed.], 326, § 1, sub. 4) which gives the surrogate power to enforce the payment of debts and legacies, and also under the section (3 R. S. [5th ed.], 146, § 49) which declares that the executor * * *

or any person interested in the estate may have such will proved before the proper surrogate, a person claiming to be a legatee under a codicil afterward revoked is entitled to a hearing.

APPEAL from an order of the surrogate, denying an application of infants for leave to contest the validity of a second codicil to the will of a testator, who, in a prior codicil had given to such infants legacies which were revoked by such second codicil, the infants not being next of kin of the deceased.

*Anson Blake Jackson* and *Aaron Pennington Whitehead*, for the appellants. Immediately upon the probate of the will and first codicil the infants, appellants, had such an interest as should have entitled them to a hearing in opposition to the probate of the alleged second codicil. (*Walsh* v. *Ryan*, 1 Bradf., 433; *Terhune* v. *Brookfield*, 1 Redf., 220; *Re Lucius Chittenden*, 1 Tuck., 135; *Kipping & Barlow* v. *Ash*, 1 Robt. [Eccl.], 270.) The application came within the spirit of the Revised Statutes. (Chap. 6, title 1, art. 2 [2 R. S., Edmonds' ed., p. 61].) These statutes are highly remedial, and should be liberally construed. (Potter's Dwarris on Stat., 73, 231, 233, 234; Broome's Legal Maxims, 83; Co. Lit. 246; Jenk. Cent., 58–60, 226; per ASHURST, J., *Pasley* v. *Freeman*, 3 T. R., 63; per PARKE, J., 7 Taunton, 515 [2 E. C. L. R.]; *Fletcher* v. *Lord Londes*, 2 Bing., 550 [11 E. C. L. R.].) Aside from this statute, the surrogate had ample power to open the probate of this second codicil and grant a rehearing on the application of the petitioners. (*Campbell* v. *Logan*, 2 Bradf., 90, etc.; *Pew* v. *Hustings*, 1 Barb. Ch., 452; *Proctor* v. *Wanmaker*, 1 Barb. Ch., 302, and cases there cited; *Harrison* v. *McMahon*, 1 Bradf. 290; *Dobke* v. *McClaren*, 41 Barb., 491; *Brick's Estate*, 15 Abb. Pr., 12; *Sipperly* v. *Baucus*, 24 N. Y., 46.) No laches can be imputed to the petitioners in their application to the surrogate. (*Rogers* v. *Cruger*, 7 Johns., 581, 613; PAIGE, J., in *Lefevre* v. *Laraway*, 22 Barb., 175.) There was a presumption of undue influence strong enough to make it the duty of the surrogate to grant the petition for a rehearing. (*Newhouse* v. *Godwin*, 17 Barb., 236; *Leacraft* v. *Simmins*, 3 Bradf., 39; *Darley* v. *Darley*, 3 id., 481; *Wilson* v. *Moran*, 3 id., 180; 1 Swinburn on Wills, 191; *Marsh* v. *Tyrrell & Harding*, 2 Hagg. Eccl., 87; *Billinghurst* v. *Vickers*, 1 Phil.,

199; *Ingram* v. *Wyatt*, 1 Hagg., 449; *Michell* v. *Thomas*, 12 Jur., 967.) The surrogate's order denying the petition is subject to review in this court. (*McMahon* v. *Harrison*, 6 N. Y., 447; *Delaplaine* v. *Lawrence*, 3 id., 302.)

*Francis C. Barlow*, for the executors, respondents. The surrogate did not place his denial on the want of power. The surrogate having denied the motion generally, must be presumed to have done it on the merits. The rule when motions are made for new trials on the ground of newly discovered evidence should prevail here. (See cases cited in Abbott's Digest, new edition, vol. 4, p. 525, §§ 405, 406, 407, 408 and 409; and see, also, *Adams* v. *Bush*, 2 Abb. [N. S.], 102; *Quinn* v. *Lloyd*, 1 Sweeney, 253; *Denn* v. *Morrell*, 1 Hall, 382.) There is no legal right in these infants to be heard, and as to equities, there are none, without an explanation of the long delay, and a much greater suggestion of injury to these legatees than their mere allegation of incapacity and undue influence.

*B. C. Chetwood*, for the infant respondents.

DANIELS, J. :

The surrogate of the county of New York took proof of, and admitted the will and second codicil of the testator to probate.

By that codicil, a bequest in trust for the appellants, contained in the first codicil, was revoked, and they were deprived of the interest which it gave them in the testator's estate. They were infants and not cited, and did not, in fact, appear on the hearing before the surrogate, and, accordingly, had no opportunity whatever of contesting the validity of the second codicil. That, with the will, was admitted to probate on the 2d of December, 1874; and, in November, 1875, an application was made by their guardian, on their behalf and in their name, to the surrogate for leave to contest the validity of the second codicil, on the ground that the testator was not of sound mind when it was made, and because it had been obtained by coercion, imposition and undue influence. That was resisted by the executors and the other persons interested in the estate under the will and second codicil, and,

on the nineteenth of November, it was denied. From the order denying it the infants, by their guardian, appealed.

· Upon what ground the application was denied by the surrogate does not appear. But it probably was for the reason that they were not next of kin of the testator, and, therefore, not within the provisions of the statute allowing the validity of a will of personal estate to be contested within one year after its admission to probate. It is chiefly under the provision contained in this section of the statute that the propriety of the order made has been questioned on this appeal, and if the application could be supported by no other authority, it would be exceedingly difficult to render it successful, for this section relates, in terms, only to proceedings which may be taken in favor of the next of kin of the testator. (3 R. S. [5th ed.], 142, § 24.) The phrase used is one of well known legal signification, and there is nothing in the statute from which it can be inferred that it was intended to have any other than its appropriate meaning; and, for that reason, it should not be so far extended, by construction, as to include persons claiming to be legatees who are not at the same time next of kin of the testator. The surrogate was probably right in holding that the applicants were not entitled to the hearing under it, which was applied for in their behalf. But the power of the surrogate to relieve parties not heard from the controlling effect of the probate of a will of personal estate is not wholly contained within that section of the statute. The immediately preceding section, prescribing the effect of probate in such a case as that, has not rendered it entirely absolute. But it makes it conclusive, subject to certain future contingencies, and among them is that providing that the will may, nevertheless, be declared void by a competent tribunal. (3 R. S. [5th ed.], 142, § 23.) Under this section it may, after its probate, be declared void by a competent tribunal. The statute has not designated the tribunals which shall possess that authority over the probate. But, from the fact that the surrogate has been, in general terms, empowered to take proof of wills of real and personal estate in the cases prescribed by law (3 R. S. [5th ed.], 362, § 1, sub. 1), which includes the will of any person who, immediately preceding his death, was an inhabitant of the same county as the surrogate, (id., § 2), it would seem to follow that his court was intended to·

be a tribunal of the description referred to in the statute In that class of cases the power of the surrogate to take the proof is entirely complete and unrestrained, and must, therefore, include an instrument of the description of that under which the applicants claimed their legacies; that was, substantially, a will in their favor, although, in terms, known only as a codicil; it was part of the testator's will, and, if not annulled by the second codicil, has remained so, and under its provisions they may still secure such legacies. Whether it was revoked must depend, as the formal requisites seem to have been observed in its execution, upon the testamentary capacity of the testator at the time of the execution of the last codicil, and his freedom from imposition, control and undue influence. That can only appear by proof, and such proof properly constitutes a portion of the entire proof of the will, and the applicants alone are interested in making it for the protection of their claims to these legacies, and have yet had no opportunity to produce it. The complete jurisdiction given to the surrogate over the proof of wills must render his court a competent tribunal, and, perhaps, the only tribunal which can declare void the probate of a will of personal estate; and, in such a case as this, justice can only be completely done by hearing the applicants for the protection of their rights.

The jurisdiction also seems to be properly maintained under the provision of the statute giving the surrogate power to enforce the payment of debts and legacies (3 R. S. [5th ed.], 326, § 1, sub. 4); that authority is unrestrained, and must include the right to hear the proofs which can be produced by legatees to establish their claims to legacies, and, as incidental to that, the question whether a codicil divesting the right of the legatees to legacies previously given must necessarily be included. The power to enforce payment can be fully and properly exercised in no other way.

It may also be very clearly derived from the provision of the statute which declares that " the executor, devisee or legatee named in any last will, or any person interested in the estate, may have such will proved before the proper surrogate." (3 R. S. [5th ed.], 146, § 49.) Under this section, the legatee may insist, upon his own behalf, on the proof of the will; and, for the purpose of establishing his right, may produce whatever evidence shall be in

his power to maintain his title to a legacy given him by any part of the testator's will. The right to the hearing is positive in its nature, and cannot properly be denied when it may be lawfully applied for. These legatees had the right to insist that the first codicil remained a part of the testator's will, notwithstanding the existence of the second one, and propound it for probate; and to sustain themselves in that position by any proof which would show that the last codicil was, for any reason, inoperative. In no other way can the full benefit of this provision of the statute be secured to them.

It is not the policy of the laws to deprive parties of their proprietary rights and interests without affording them an opportunity to be first heard, and the requirement cannot be justly satisfied by a formal hearing in their behalf by other parties whose interests may be best subserved by the failure of the claim made. No such hearing upon the validity of this codicil has been had as the interests of the applicants require, and it could not properly be had without their presence, as parties to the proceeding, with the privilege of producing evidence to maintain their claims.

The provision of the statute declaring the effect of the probate of a will of personal estate would be entirely unreasonable, and, probably, unconstitutional, without the right to such a hearing, before the surrogate, of parties against whom it should be held conclusive, for it would be attended with the result of depriving persons of their property without due process of law. This right to be heard by parties intended to be concluded by the probate has been maintained by authority. In *Bogardus* v. *Clark* (4 Paige, 623), it was held that the probate " is in the nature of a proceeding *in rem*, to which any person having an interest may make himself a party by applying to the proper tribunal before which such proceeding is had, and who will, therefore, be bound by the sentence or decree of such tribunal, although he is not, in fact, a party." (Id., 626.) And that was approved and sustained by the Court of Appeals in the case of *Vanderpoel* v. *Van Valkenburgh* (2 Seld., 190, 199).

The authority of the surrogate of the county of New York has been rendered still more complete in this respect, if that could, in any view, be regarded as essential, by the recent statutory pro-

vision giving him "the same power to set aside, open, vacate or modify the orders or decrees 'of his court,' as is exercised by courts of record of general jurisdiction" (Laws of 1870, vol. 1, 826, § 1), and that is as broad as the nature of any case may require for the promotion of the ends of justice. The form in which the application was made on behalf of these infants was sufficient to entitle them to the benefit of all the statutory provisions which have been mentioned; and it was made with reasonable diligence, particularly as infants are not properly chargeable with the consequences of delay in legal proceedings. It may, very likely, turn out that they can, in the end, derive no benefit from a further hearing of the case, but that is no reason why it should be denied them. The interests of all parties will be best subserved by having this controversy heard and decided as soon as it may be practicable. If the claim made on behalf of the applicants is a valid one, they will be better able to maintain it now while the evidence may be accessible by which that can be shown, and, if it is not, that should be ascertained in order that a final distribution under the will may safely and finally be made. That can be done in no other way, for, if the applicants are right in their claims, they cannot be divested of their interests without first being heard in support of them. There can be no substantial ground for doubting the power of the surrogate to hear and finally decide this controversy. For that reason, the order, so far as it has been appealed from, should be reversed, and the proceedings remitted to the Surrogate's Court, with directions to enter an order for the hearing of the applicants, and the parties should recover their costs out of the estate in the hands of the executors.

BRADY, J., concurred in the result; DAVIS, P. J., taking no part.

Order reversed; proceedings remitted to Surrogate's Court, with directions to enter an order for the hearing of the applicants, and the parties to recover their costs out of the estate in the hands of executors.